IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINA LYNN MORGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-413-BMJ |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Christina Lynn Morgan, seeks judicial review of the Social Security Administration's termination of her disability insurance benefits (DIB). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 10], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.     Procedural Background**

On March 2, 2016, an Administrative Law Judge (ALJ) issued a decision finding that Plaintiff had a period of disability, from April 30, 2013, through April 24, 2015, but that as of April 25, 2015, Plaintiff had experienced medical improvement and was not thereafter disabled. AR 15-29. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-5. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

## II.     The ALJ's Decision

"When an ALJ grants benefits to a claimant for a closed period, two decision-making processes occurs." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013). To that end, the ALJ first began with the traditional five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff meets the insured status requirements through June 30, 2018, and has not engaged in substantial gainful activity since April 30, 2013, her alleged disability onset date. AR 18. At step two, the ALJ found that between April 30, 2013, and April 24, 2015, Plaintiff suffered from severe: "ulcerative colitis, with chronic diarrhea, status post August 2014 incision and drainage of perirectal abscess, status post December 2014 partial fistulectomy; Crohn's disease, July 2014 onset; obesity; major depressive disorder, severe; bipolar disorder; and panic disorder." *Id*. at 19.[2] At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 20.

The ALJ next determined Plaintiff's residual functional capacity (RFC) from April 30, 2013, through April 24, 2015, and concluded that Plaintiff could perform "sedentary work" except that:

> [Plaintiff] could only:  occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; understand, remember and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; have only incidental, superficial work-related type contact with co-workers and supervisors, i.e., brief, succinct, cursory, concise communication relevant to the task being performed; would require, at least, one additional unscheduled break daily, at a random and unpredictable time of the

---

[2] The ALJ considered Plaintiff's asthma, anemia, arthritis, and syncope, and found those impairments non-severe. AR 19. The ALJ also discussed Plaintiff's fibromyalgia and spine disorder, and found neither constituted a "medically determinable impairment." *Id.*

workday, of about 15 minute duration; and would be absent from the workplace, on average, one day every 2 weeks.

*Id.* at 20-21.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. *Id.* at 24. At step five, relying on a vocational expert's (VE) testimony, the ALJ found with that RFC, "there were no jobs that exited in significant numbers . . . that [Plaintiff] could have performed." *Id.* at 24. Therefore, the ALJ concluded that Plaintiff was disabled from April 30, 2013, through April 24, 2015. *Id*. at 25.

Having found Plaintiff disabled, the ALJ next engaged "in the benefits-cessation decision-making process." *Newbold*, 718 F.3d at 1262. This is an eight-step evaluation process. *See Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (describing the process used in "termination-of-benefit reviews"); *see also* 20 C.F.R. § 404.1594(f)(1)-(8). At steps one and two, the ALJ found that from April 30, 2013 to April 24, 2015, Plaintiff had been "under a disability," and that after April 25, 2015, Plaintiff's severe impairments had remained the same. AR 25. At step three, the ALJ again found that Plaintiff's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* At step four, the ALJ determined that "[m]edical improvement occurred as of April 25, 2015," and that such improvement was "related to the ability to work." *Id.* at 27. Continuing to step six,[3] the ALJ assessed Plaintiff's RFC beginning on April 25, 2015, and held that she could still perform "sedentary work" except that:

> [Plaintiff] can only: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; understand, remember and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact

---

[3] An ALJ only reviews step five if he finds that there has been no medical improvement, or such improvement is not related to the ability to work. *See* 20 C.F.R. § 404.1594(f)(5).

3

> with the general public; have only incidental, superficial work-related type contact with co-workers and supervisors, i.e., brief, succinct, cursory, concise communication relevant to the task being performed.

*Id.*

At step seven, the ALJ determined that Plaintiff still could not perform any past relevant work, *id.* at 28, and at step-eight, with the aid of the VE's testimony, the ALJ held that beginning on April 25, 2015, Plaintiff could perform work existing in significant numbers within the national economy. *Id.* Accordingly, the ALJ found that Plaintiff's disability ended on April 25, 2015. *Id.* at 29.

### III. Claims Presented for Judicial Review

Plaintiff does not challenge the ALJ's finding that she was disabled from April 30, 2013, through April 24, 2015. *See* Pl.'s Br. at 15. Instead, focusing on the ALJ's termination decision, she alleges: (1) the ALJ failed to shift the burden to the Commissioner during the termination analysis; (2) the Commissioner failed to prove that after April 25, 2015, Plaintiff "no longer suffered from bouts of intermittent diarrhea necessitating unscheduled breaks and from intermittent flare ups of Crohn's disease necessitating periods of missed work;" (3) the ALJ failed to give legitimate reasons to justify termination; and (4) the ALJ failed to consider the combined impact of all her impairments "on her ability to work." *Id.* at 14-23.

### IV. Standard of Review

"In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency. Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards." *Newbold*, 718 F.3d at 1262 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence

4

as a reasonable mind might accept as adequate to support a conclusion." *Id.* (same). "It is more than a scintilla, but less than a preponderance." *Id.* (same).

V. **Analysis**

A. **The ALJ's Alleged Failure to Shift the Burden**

Once an ALJ finds that a claimant is disabled, the Commissioner carries the burden of showing that benefits should be terminated. *See Hayden*, 374 F.3d at 991. In her first proposition, Plaintiff seeks reversal for alleged legal error, arguing that the ALJ "did not acknowledge that the burden of proof shifted to the Commissioner" at the termination stage. Pl.'s Br. at 16. Plaintiff further complains that the ALJ: (1) "relied on his own credibility findings to reject [Plaintiff's] testimony;" (2) "adopted the remote opinions of the state agency physicians and remote medical evidence he previously rejected in finding [Plaintiff] was disabled;" and, (3) "did not identify medical evidence that would meet the Commissioner's burden of production and of proof to show [Plaintiff's] disability had ceased in April 2015." Pl.'s Br. at 16.

The Court first notes that Plaintiff's off-handed reference to the ALJ's credibility determination in this proposition – with no further explanation or development – is insufficient to warrant the Court's review. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (holding that the court will consider waived all "unspecific, undeveloped, and unsupported" arguments). Additionally, a close reading of the record shows that the ALJ: (1) acknowledged that "the [ALJ] must show that medical improvement has occurred," AR 17; (2) actually *rejected* the State agency physicians' opinions, *id.* at 23, 28; and, (3) identified "Exhibit 10F" and "Exhibit 12F" as evidence showing medical improvement. *Id.* at 27. As such, the Court finds no reversible legal error in Plaintiff's first proposition.

5

## B. The Alleged Lack of Substantial Evidence to Support Medical Improvement

Plaintiff next argues that the Commissioner failed to come forward with substantial evidence showing that after April 25, 2015, her Crohn's disease "had improved to the point that she no longer was susceptible to flare ups of the disease and did not have bouts of diarrhea which would require the unscheduled breaks and missed work . . . ." Pl.'s Br. at 17. In particular, Plaintiff complains that the ALJ "did not refer [her] for a consultative examination nor did he obtain [an] updated medical expert opinion." *Id.* at 18. Thus, Plaintiff surmises that "there was no legitimate medical opinion evidence for the Commissioner to rely on to meet her burden to justify termination of [Plaintiff's] benefits under the applicable legal standards." *Id.* The Court disagrees.

In reaching his decision, the ALJ noted that Plaintiff's December 2014 fistula surgery was successful, with no recurrence or treatment since December 2014, and that in March 2015, Plaintiff's Crohn's disease was noted to be somewhat better. AR 27 (*citing id.* at 645). Then, the ALJ discussed medical evidence from April 2015, showing Plaintiff was gaining weight and had gone "from chronic diarrhea (Exhibit 10F, page 1) to 'mild' diarrhea in April 2015." *Id.* at 27 (*citing id.* at 471). The evidence showed this had been Plaintiff's condition "for months" and her condition "was stable." *Id.* (same). On this issue, the ALJ noted that Plaintiff's attorney agreed that Plaintiff had diarrhea "only 2-3 x a day and it is mild." *Id.* (emphasis omitted).[4]

Plaintiff acknowledges that the ALJ considered this evidence. However, she argues that because the evidence shows she was "still having two to three watery BM's a day with occasional blood," this means "her problems with diarrhea were essentially the same in April 2015 as they were during the period of disability found beginning in April 2013." Pl.'s Br. at 19. However, not

---

[4] As Plaintiff points out, the ALJ believed her attorney made this statement. *See* Pl.'s Br. at 28. Actually, the ALJ made this statement at the hearing, and Plaintiff's attorney agreed. AR 65. The Court finds no reversible error in the ALJ's misstatement.

only does the record dispute this argument, *see* AR 22-23 (citing relevant medical evidence showing, from April 2013 to April 2015, hospitalizations, surgeries, and "seven to ten watery stools a day and rectal bleeding"), but Plaintiff is essentially asking this Court to reweigh the evidence – conduct this Court cannot engage in. In sum, the ALJ considered the relevant medical and the Court finds that it substantially supported his finding that Plaintiff's medical impairment had improved so that she did not require unscheduled breaks or missing work. *See Grede v. Astrue*, 443 F. App'x 323, 327 (10th Cir. 2011) (rejecting plaintiff's argument that the ALJ "incorrectly determined that he needed access to a restroom due to diarrhea only twice during a working day" where the evidence showed he had "chronic diarrhea only two to four times per day with one or two of those times occurring during the workday").

The fact that the ALJ did not send Plaintiff for a consultative examination or ask for an updated medical opinion does not change that finding. First, there was no inconsistency in the evidence and the evidence was not wholly insufficient for the ALJ to make a determination. Thus, no consultative examination was required. *See* 20 C.F.R. § 404.1519a (discussing when a consultative examination might be purchased); *see also Jazvin v. Colvin*, 659 F. App'x 487, 490 (10th Cir. 2016) (holding that where the record does not contain a "direct conflict in the medical evidence, inconclusive medical evidence, or [shows a need for] additional tests . . . to explain [a] diagnoses," an ALJ has no duty to further develop the record).

Second, Plaintiff seems to suggest that her RFC – and particularly the absence of any requirement for unscheduled breaks and missing work – lacks substantial evidentiary support because it does not line up with an expert medical opinion. *See* Pl.'s Br. at 18, 21. But there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. And, "'the ALJ, not a physician, is charged

7

with determining a claimant's RFC from the medical record.'" *Watts v. Berryhill*, 705 F. App'x 759, 761 (10th Cir. 2017) (*citing Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Courts have thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949.

In short, the Court finds that the ALJ had substantial evidence to support his decision that, after April 25, 2015, Plaintiff did not require unscheduled bathroom breaks and would not be required to miss work frequently and was thus medically improved for purposes of terminating her benefits.

### C. The ALJ's Alleged Lack of Legitimate Reasons to Terminate Benefits

Plaintiff next claims that the ALJ lacked legitimate reasons to terminate her benefits. However, in her discussion, Plaintiff actually challenges the ALJ's credibility findings. *See* Pl.'s Br. at 20-21. The Court finds no grounds for reversal on this issue.

In assessing Plaintiff's credibility (as it relates to the termination of her benefits), the ALJ held:

> In support of the foregoing finding regarding [Plaintiff's] credibility, the undersigned notes [Plaintiff] tends to exaggerate as to her loss of weight. In November 2013, she reported a 40 [pound] weight loss since June 2013. This is just not true. She lost only 35 pounds from December 2012 (239 pounds) to March 2014 (204 pounds) (Exhibit 3F, page 1). In March 2014, she reported a 65 [pound] weight loss since June 2013. This is just not true. She lost only 35 pounds from December 2012 (239 pounds) to March 2014 (204 pounds) (Exhibits 5F, page 9, 6F, page 8, and 10F, page 13). In addition, the undersigned notes [Plaintiff] had no change in weight in 4 months, since November 2013 (204 pounds).
>
> In December 2013, [Plaintiff] alleges a 50 pound weight loss. This is not true. It was only 35 pounds in the prior year (Exhibit 5E).
>
> In December 2014, she told Dr. Mufti that she had been diagnosed with Crohn's in October 2013. This is not true. The first time it was mentioned was July 2014 (Exhibit 10F, page 6). Dr. Mufti's diagnoses appears to rely upon [Plaintiff's]

8

reports, thus, his conclusions are based upon inaccurate premises (Exhibit 12F, page 10).

In additional support of the foregoing finding regarding [Plaintiff's] credibility, the undersigned notes [Plaintiff] testified she goes 10 times a day for the last year at least. This is not supported by the medical evidence of record. Specifically, in April 2014, [Plaintiff] stated she had one to four semi-solid stools a day (Exhibit 10F, page 11). In April 2015, [Plaintiff] stated two or three watery stool a day (Exhibit 10F, page 1). Furthermore, at the hearing, her lawyer himself said: "Also recently the diarrhea is only two or three times a day and it is mild."[5]

AR 27-28 (emphasis omitted).

Plaintiff first complains about the ALJ's finding that she had not lost fifty pounds as she had alleged. According to Plaintiff, the evidence shows she lost fifty-four pounds from 2012 to 2014. *See* Pl.'s Br. at 20. But Plaintiff alleged in her disability papers that she had lost "50 plus pounds" "since Dec. 2012 approx." AR 221. And, as the ALJ noted, Plaintiff lost only thirty-five pounds from December 2012 (239 pounds) to March 2014 (204 pounds). *Id.* at 27-28, 306, 378.

Plaintiff next challenges the ALJ's decision to discredit her testimony because she told a physician that she had been diagnosed with Crohn's in October 2013, but it was not mentioned in the record until July 2014. *See* Pl.'s Br. at 21. But rather than pointing to evidence that she *had* been diagnosed with Crohn's in October 2013, she argues only that she had "a severe bout of colitis with bloody diarrhea in October 2013" and a March 2014 test showed "the presence of granulomata which was described as commonly seen in Crohn's disease." *Id.* Plaintiff's arguments are misplaced. The ALJ was not disputing that Plaintiff suffered disabling physical impairments in October and March 2014, and was not disputing that Plaintiff was eventually diagnosed with Crohn's disease. Instead, the ALJ noted that Plaintiff told a physician she had been diagnosed with Crohn's disease in October 2013, and the record reflects that diagnosis was

---

[5] *See supra* n. 4.

9

not made until July 2014. Plaintiff's arguments on this issue simply do not undermine the ALJ's actual credibility finding.

Finally, Plaintiff argues that the ALJ found her less than credible when she testified that she "went to the bathroom 10 times a day" but the record reflects she had "intermittent diarrhea two or three times a day." Pl.'s Br. at 21. Again, the ALJ understood that Plaintiff still suffered from mild diarrhea, occurring two or three times a day, AR 28, but he was well within his providence to decide Plaintiff was less than credible when she alleged she needed to visit the bathroom roughly five times more often than the record reflected.

Plaintiff has failed to show that the ALJ ignored or misstated evidence in his credibility assessment, and this Court will not reweigh that evidence. So, the Court again finds no grounds for reversal.

### D. The ALJ's Alleged Failure to Consider the Impact of all Plaintiff's Impairments

Finally, Plaintiff alleges that the ALJ erred in failing to consider the impact of her morbid obesity, fibromyalgia, Crohn's induced arthritis, and "fatigue, memory problems, sleep problems, depression, anxiety and irritable bowel syndrome" on her RFC. Pl.'s Br. at 22-23. Relatedly, she claims that the ALJ "did not give legitimate reasons to reject the diagnoses of [Plaintiff's] treating orthopedist" and "did not obtain medical expert opinion evidence to evaluate these impairments." *Id.* at 23. Reversal is not warranted on these grounds.

Notably, the Court finds Plaintiff's allegation that the ALJ rejected the physician's diagnoses to be too undeveloped for sufficient review. That is, Dr. Kashif A. Mufti, M.D. diagnosed Plaintiff with underlying arthritis and fibromyalgia, AR 646, and while the ALJ found her arthritis non-severe, and her fibromyalgia not to be a "medically determinable impairment" for purposes of disability, he *did not* reject the diagnoses. *Id.* at 19 (finding that Plaintiff's physician

"noted [her] inflammatory arthritis" and "diagnosed . . . fibromyalgia" in March 2015).  Without any citation to the record or further explanation about how the ALJ allegedly erred in this manner, the Court cannot properly analyze Plaintiff's argument and deems it waived.  *See Tietjen*, 527 F. App'x at 709.

Turning to Plaintiff's remaining arguments, the Court has already found that substantial evidence supports the ALJ's decision not to include additional RFC restrictions based on a need for unscheduled bathroom breaks or missing work, *see supra* pp. 6-8, and the RFC included numerous physical and mental limitations.  For example, the ALJ acknowledged that Plaintiff can only "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl[] [and can] never climb ropes, ladders, or scaffolds[.]"  AR 27.  The ALJ also held Plaintiff can "understand, remember and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; have only incidental, superficial work-related type contact with co-workers and supervisors, i.e., brief, succinct, cursory, concise communication relevant to the task being performed."  *Id.*  Plaintiff fails to offer any argument suggesting that these limitations do not adequately account for her impairments.  *See Kirkpatrick v. Colvin*, 663 F. App'x. 646, 649 (10th Cir. 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how the[] restrictions [that were included in the RFC] fail to account for his [limitations]").  Further, an ALJ is not required to include any limitations in the RFC unless the record supports those imitations.  *See id*. at 650 ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record.").  As noted above, this is not a circumstance where there was a "direct conflict in the medical evidence, inconclusive medical evidence, or additional tests [were] needed to explain [a] diagnoses" and further development of

the record was therefore not required. *Jazvin*, 659 F. App'x. at 490. Finally, Plaintiff neither identifies any additional functional limitations that the ALJ should have included nor does she cite any medical evidence to support her conclusion. *See, e.g., McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because plaintiff does not "discuss any evidence that would support the inclusion of any limitations [in the RFC]" and holding "the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment]"). It is not this Court's duty to search the record for medical evidence that might support Plaintiff's alleged limitations. *See N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 803 (10th Cir. 2016) ("[I]t is emphatically not this court's duty to scour without guidance a voluminous record for evidence supporting [Plaintiff's] theory." (internal quotation marks and citation omitted)). The Court therefore finds no grounds for reversal.

## VI. Conclusion

Plaintiff has failed to show any reversible error in the ALJ's decision to terminate her disability benefits beginning April 25, 2015. Accordingly, the decision of the Commissioner is AFFIRMED.

ENTERED this 31st day of January, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE